Good morning, Your Honors. May it please the Court, my name is Jeff Bollender and I represent Great Divide Insurance Company, the appellant. This appeal and the dispute between the parties primarily involves a matter of intent, specifically the intent of the parties at the time they formed their contract of insurance. Under Hawaii law, which governs the interpretation of this insurance policy, the Hawaii Supreme Court has held that the ordinary rules of contract interpretation apply to insurance products, including liability insurance policies. The Hawaii Supreme Court has also said that the primary objective of contract interpretation is to ascertain and effectuate the intent of the parties at the time of formation. The function in interpreting the policy is to perform a contextual analysis of any disputed language in the context of the entire policy and to look no further than the four corners of the contract to find any ambiguity. Those rules also indicate that if an ambiguity is found that the court should consider extrinsic evidence to resolve the ambiguity if possible. Here, the principal dispute between the parties is differing interpretations of the term... You have Hawaii law that says you consider extrinsic evidence in an ambiguity. I'm sorry, Your Honor. You have Hawaii law that supports that statement that you consider extrinsic evidence if you find an ambiguity. That is correct, Your Honor. What is the Hawaii law? The Hawaii law follows the restatement of contract second and essentially says that if an ambiguity is found... What case says that? What Hawaii case says that? At this moment, I do not know the precise citation of Hawaii law. Well, do you have? Did you cite in your briefs? Well, I've cited Ninth Circuit cases that have... I'm asking about Hawaii law. Do you have a Hawaii case that supports your statement? Yes, I do, Your Honor. And what is that? If I could refer to my brief, I can, but I don't have the name of the case in front of me. It's in your brief? It is definitely in my brief. I thought you relied on the Washington State case, Century Select. Well, that is one case that we brought to the court's attention shortly after trial in our proposed... I don't think I saw in your brief, though, a Hawaii case to support that. Maybe I missed it. Your Honor, I do believe that it is in the brief. Well, maybe you can, on rebuttal, when you come back, you can look through your brief and give the court the name of the case. Sure. Judge Benedict is requesting. Shall I proceed? But I guess the question further is how does that apply in the insurance contract when essentially it's a contract of adhesion to which different rules apply? Well, Your Honor, first of all, I do know that the Hawaii courts have said that all insurance products are contracts of adhesion. Right. So, I mean, the idea of intent and ascertaining the intent of the parties is somewhat different in a contract of adhesion. So how does that apply in the insurance contract? You've been citing general contract law, but this is in the insurance context. So how does our analysis differ? Right. Well, first of all, I think that I realize that Hawaii law says that all insurance products are contracts of adhesion. I'm not sure that is really true in all cases, that they are, in fact, a contract of adhesion. That certainly wasn't pled as an affirmative. Well, let's assume for a moment that it's a regular insurance contract. And the general rule is that that's a contract of adhesion, although assume there may be exceptions. But under the general rule, with a contract of adhesion, is there a rule with respect to extrinsic evidence? I do not am aware of any Hawaii law that says that in a contract of adhesion that extrinsic is or is not allowed to be admitted to ascertain the intent of the parties. I would note, however, that the district court in 2007 issued a published opinion involving an insurance product, and there the court did apply the parole evidence rule to exclude extrinsic evidence. But it did say that in that case that extrinsic evidence is permitted to ascertain the intent of the parties. And I can pull my brief to find that case, but it was a 2007 district court case. Ninth Circuit. That's at the end of the Hawaii district court. That's correct. Let me ask you another question about that. Let's assume again that this is the kind of case in which, under some circumstances, extrinsic evidence would be permitted. What did you offer as a showing in the way of extrinsic evidence? Yes, Your Honor. Four things. And these are evidence that is not in dispute. First, the maluna, the defendant and appellee, procured insurance from Great Divide because the prior policy had been canceled, and the specific reason was because no locks had been put on the gate. Second, on the date the policy was issued, the president of Maluna, in writing, specifically promised to fix the gate within approximately three weeks, and that if it didn't, its own broker would cancel that policy. That date passed, and the broker did not cancel the policy, but a few weeks later went to the grounds, inspected the property, found that the gate had not been corrected, and advised Maluna to get it fixed and retain a locksmith. What time relevance is that to the time of the incident involving this policy and the death of the child? That was the first of three policies. What's the time difference? Approximately two and a half years. So two and a half years before the incident, these things happened. Okay? That's correct, Your Honor. Thereafter, after the broker told them to fix the gate because it was going to cause insurance problems, they did not fix the gate. The minutes thereafter reflect the fact they knew they needed to fix the gate. Minutes of what? I'm sorry, Your Honor. The minutes of the homeowners association meetings. There was a series of meetings involving various HOA or association issues, and in several of these minutes it's reflected that they knew that they needed to get locks on the gates, they knew it was a serious liability exposure, and they did not fix the gates. Are you accurately stating that the minutes say that there were no locks on the gate at all? Well, that is correct. There were no locks on the gate, period. That is correct. There is no dispute that at the time of the incident there were no locks on the gate. Which incident? I'm sorry, the drowning incident, Your Honor. There were no locks on the gate, period. That is correct, no locks. Absolutely nothing on the gate to lock it. There was no lock in the sense of... No, no, no. I understand what you're going. Okay. Were there any kind of locks whatsoever on the gate? Latches, locks, retainers? There was a latch, a rusty defective latch. Yes, there was a latch. That's different from no lock. Well, I guess... Depending on how you want to go in your argument, and I read your briefs about lock. That goes to the issue of interpret the policy of whether it required a lock. That's correct, Your Honor. I mean, first of all, the issue with extrinsic evidence, I can, I see my time is eroding away here, so I better retire so I have time for rebuttal, but I believe that extrinsic evidence is not necessary here because the term self-locking, both in the context of this particular endorsement as well as in the context of two other endorsements, clearly indicates that a lock is needed. The term lock, when used in reference to a gate involving a conditional exclusion for a swimming pool, I think it's clear that means a lock requiring a key or combination. There are two other endorsements, one that excludes coverage for swimming pool accidents if there's no warning sign, and another one for if there's no life-saving equipment, and I believe that the district court at the summary judgment stage did not perform a contextual analysis, and had he done that, I mean, the court did say that lock in reference to a door would require a key or combination, but the court referred to an airline tray table analogy, and it seems to me that the court looked beyond the four corners of the policy to find an ambiguity, and once an ambiguity was found, did not consider the extrinsic evidence, which clearly shows. I don't understand your argument, I guess, on extrinsic evidence. Let me explain myself. I can understand it perfectly if you're talking about rescission or misrepresentation, but when you're talking about contract interpretation, this is not a two-party negotiation about a contract. These are endorsements that are drafted and promulgated by the insurance company, and consistent, I assume, with generally accepted language in the insurance industry, right? So when you're talking about intent of the parties in the language, how can anything that the insured has to do with what it considers to be self-talking have any implications on the policy language at all? Well, I'm not sure I understand the question. Let me put it a different way then. Let's say that the insured said, look, I had a whole different understanding of what warning meant. You would say, no, the warning is contained, and the language about warning is explicit in the policy, and what the insured understood it to mean doesn't make any difference if it's contrary to the policy. Therefore, extrinsic evidence shouldn't be considered in considering what a warning meant. Why doesn't the same logic apply to the interpretation of contract language? Your Honor, I agree. I agree that extrinsic evidence only comes in once an ambiguity is found, and the ambiguity should only be found within the four corners of the contract. And our position is that there should never have been a finding of ambiguity in the first place. No, I understand that. What I mean, what you're arguing is if there's ambiguity, you're entitled to put in extrinsic evidence. My question is, why is this type of extrinsic evidence relevant to contract formation in the insurance context? Because it tends to get, I mean, if you'll allow me here for a second. The insured didn't draft the language. You drafted the language according to industry standards. And if you're saying that the insured's understanding can modify the language that's drafted according to industry standards, you're sort of turning the insurance law upside down, aren't you? I don't believe so. I believe that I think what the contract rules say is if an ambiguity is found. I'm talking about an insurance contract, not contract. There's a difference. Well, the Hawaii Supreme Court has said that the ordinary rules of contract law, including interpretation, apply to insurance products. And I cited case law that made that very clear. And I don't believe, as in the Washington court and the Ninth Circuit interpreting Washington law, found the same thing. I found no material differences between Washington law and Hawaii law. But you don't have a Hawaii case, I don't think, on this point. I think Judge Brunetti's quite correct. He didn't cite one, and we haven't found one, that says that in the case of insurance policies, you accept the interpretation of insurance policies and ambiguities. You go to the extrinsic evidence to determine what the policy language implies. Well, I believe that you are correct that we have not cited a Hawaii state court opinion that says that in an insurance context, extrinsic evidence can be considered. We did cite general contract law to that effect, and also a district court opinion in 2007. But you started off today saying Hawaii state law governs, and we don't have any Hawaii state law on this particular point, which seems to be sort of critical to your analysis, right? Yes, but the Ninth Circuit has repeatedly said that because Hawaii insurance case law is so sparse, that they would resort to the restatement of second contracts. And we've cited case law that not only the Century Select case in the Ninth Circuit, but other cases that say that extrinsic evidence is permitted. So we see this to be no material difference between the Century Select case and this case. There, the Ninth Circuit found that the court properly found there was an ambiguity that failed to consider extrinsic evidence. And their reasoning there was because Washington state courts had adopted various sections of the restatement. In non-insurance cases, I should point out, I think it's the Berg case where the courts held that extrinsic evidence should be allowed in freely to help resolve contractual ambiguities. I see that my time is up. Thank you. You said the Century Select case? Century Select? I believe that. It came out the same week as the trial. I think it's Century Select. I think it was in a footnote of the court's final judgment. I was just looking to see where it was. I didn't see that in your list of cases in your brief, in either the opening brief or the reply brief. It's definitely in the opening brief. I believe it's Century Select. I believe it's in the latter part of our brief. Page 46 or 47? Yes. That's not Berg v. Scudisma? Yes. I'm sorry, Your Honor. I can clarify. I'm sorry. I don't see it in your list of cases. Well, if I'm recalling the Century Select case, though, that was a document that was considered that was a contemporaneous document, right? It was an underlying insurance policy. But the court also said that the district court should have looked at trade usage as well. And so, I mean, in our briefs, we tried to show that essentially Washington State law is consistent with Hawaii law when it comes to restatement of contracts and specifically the consideration of extrinsic evidence when it comes to resolving an ambiguity. If we went down that road, if you take a look at California law in interpreting insurance contracts, it seems to me that Hawaii is a lot closer to California law regarding ambiguities and interpreting contracts. So we could go down that road and look for all kinds of states. Well, it seems to me they used to have cases, maybe they've changed, that said that Hawaii law was basically modeled on California law. That is correct. Many of the general principles of contract law and bad faith liability are drawn from California. Did you cite any California cases in the question of extrinsic evidence in insurance contracts? I did not, Your Honor. I felt that the case law in Hawaii and the Ninth Circuit and the district courts interpreting Hawaii law were sufficient. I do know that in California... It's more favorable to you in your position, but I'm not too sure that the California law was sufficient. Well, I do know that in California, in early 1992, the Supreme Court veered away from finding ambiguity simply because a particular interpretation was semantically permissible. Right, but there's a whole... There's a difference in when we're talking about the extrinsic evidence that you're talking about and whether or not we need to reach. It's a whole other matter. I understand that. But that may go to the expectations of the insured, but it certainly... I don't see how it goes quite to the question of the party's intent in forming the contract because, in this case, it's a contract of adhesion. The insured has a choice to take it or leave it, period. So it wasn't an endorsement that was negotiated or not negotiated, and, therefore, the intent of the person who received it is somewhat irrelevant on standard insurance contract. I mean, flipping it over, I think the insurance industry would be quite concerned about your argument because then it would allow the insured to redefine insurance contracts based on the intent of the insured when they received the contract. Just an observation. Your Honor, I know that there's an anthem in many courts that all insurance products are contracts of adhesion, but I'm not really sure that's really true here. These parties were represented by... Well, as a factual matter, which part of the contract was negotiated? Well, they could have gone to other carriers and got other insurance. My point is, yeah, there was no negotiation about the language in this. There's nothing in the record indicating the parties negotiated this language. That is correct. Thank you, Your Honor. Good morning. I'm James Richard McCarty. I represent AOAO Malunakai Estates, which is a homeowners association in a small condominium complex on the island of Maui. May I please the Court? I think this is a much simpler case than counsel has tried to make it. Great Divide asked for summary judgment, which brought into question the language of this exception. And Judge Seabright ruled, well, that language is ambiguous. Let's go to trial. And Great Divide had every opportunity to file whatever exhibits or what evidence it wanted to when it filed its motion. And at trial, it had every opportunity to bring its exhibits and evidence into the trial of the case. And I was at the end of Mr. Bollinger's argument. He said, well, we don't have to get into the extrinsic evidence, but that seems to be the whole thrust of their brief. Judge Seabright ruled contracts of insurance are contracts of adhesion, and so we have to read them in the light most favorable to the policyholder. And he put that in his ruling on summary judgment and sent the case on for trial. At this point, not only Judge Seabright, but Judge Kay have both found that reasonable minds could differ as to what that language means. And there was a trial on the facts, and judgment was entered in favor of the Homeowners Association. There's nothing in the appellant's presentation that says we tried to get this evidence into the case and were not able to. We tried to file this with our summary judgment motion, but it was excluded. The fact of the matter is, is that if there was any evidence about negotiating and that type of thing, which would have led insight into the intent of the parties, it could have been offered and considered, but was not. So unless the court has questions of me, I don't have anything really to add to the brief we filed in this matter. Was there any ruling by the court as to what evidence was admissible in the trial? There was information filed that Mr. Bollinger has alluded to in the response to the motion for summary judgment. Also, Mr. Bollinger filed a motion in limine as Judge Kay indicated in his findings of fact to keep out evidence that he now says would have been material to the issue of intent. And it's somewhat confusing that he would come in now and say that evidence should have been admitted because he had filed a motion in limine to keep it out of the case. So you're saying that if he had wanted to introduce evidence of the negotiations and the discussions and the homeowners groups understanding that he would have been able to do that at the time? He didn't offer to. And I guess there may have been an objection, but at least he could have offered it. But there were no negotiations to offer. Was there any ruling by the judge that would have limited the admissibility of that evidence? There was a ruling concerning evidence of when rescission was still an issue in the case. Yes, there was a ruling by Judge Seabright on the question of evidence for rescission, but then that rescission claim was voluntarily withdrawn prior to trial by the parties. I was just going to ask about the status of the case, the underlying case. Has that been settled or tried? No, it's a waiting trial. I think it's scheduled sometime in midsummer. And waiting for the outcome of this, I presume, in some fashion. I think the parties think that your ruling will give them some indication of how to proceed with that. And so the rescission issue is not before us on the case? No, it's been withdrawn and dismissed with prejudice. Thank you, counsel. Thank you. We'll give you a minute or two. I'll be very brief. First, in reference to the motions in limine, I believe those motions went to our motion, and limine was granted, and that was to exclude the broker from offering his own interpretation of the term self-thought indicate. Second, the other motions in limine were to limit or exclude evidence in support of the affirmative defenses of waiver and estoppel. Second, in terms of addressing the court's question regarding any rulings that limited evidence, at the beginning of the trial, the court indicated it was going to adopt the ruling at the MSJ, the motion for summary judgment stage, and merely entertain evidence regarding the condition of the gate. I should note, however, that at the pretrial conference and then again at trial, virtually all of our evidence was admitted without objection. So the evidence that I alluded to earlier regarding the negotiations is a part of our record. It was a part of the record at the summary judgment stage, and it was and is a part of the record at the trial stage. In terms of the status of the case, I believe that there are some negotiations going on. There are settlement for some of the conferences, and I think it's scheduled for August of this year. Yes, I just want to know whether it had been concluded by settlement or trial. On the rescission issue, I gather that that was because Triad's knowledge is imputed to your client that that ended up falling out of the case. That is essentially the reason, yes. I mean, we made a tactical decision not to pursue that at trial. And then just to follow up on one question that somebody had, I believe it was a case they had asked for, a Hawaii case, and the case that I had alluded to was on page 52 of my brief, and it's footnote number 77. It's entitled 3139 Props, LLC versus First Specialty Insurance Corporation. I thank you for your time. Thank you. The case just argued will be submitted. The next case for oral argument is 510 versus Casey. No, that's the wrong. He's. Here we are. This is C.I.R.
judges: Reinhardt, Brunetti, Thomas